IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEONARD C. HOLMES, II,

    Plaintiff,        Civil No. 07-929-AA

    v.                ORDER

M. SCHACHTSICK, et al.,

    Defendants.

AIKEN, District Judge.

    Plaintiff, an inmate in the custody of the Oregon Department of Corrections, filed a complaint under 42 U.S.C. § 1983, alleging that defendants violated his First Amendment right to free speech and his Fourteenth Amendment right to due process by denying him access to "three how to books on computer software." Complaint (#2) p. 3. Plaintiff seeks declaratory and injunctive relief and damages.

    Defendants have moved for summary judgment (#34) and plaintiff has filed a "cross motion for summary judgment"

1 - ORDER

(#37).

The relevant facts are as follows: Plaintiff ordered the books "How to do Everything with Microsoft Access"[1] and "Beginning Regular Expressions." The mail room issued plaintiff a violation notice rejecting the publications and the books were returned to the vendor. Apparently "How to do Everything with Microsoft Access" was subsequently re-sent to plaintiff and again rejected by mail room staff and returned.

Plaintiff appealed the rejection and defendant Amsberry affirmed the mail room staff decision. Plaintiff appealed this decision, and it was affirmed by defendant Schachtsick.

<u>First Amendment Claim:</u> In <u>Turner v. Safley</u>, 482 U.S. 78, 89-93 (1987), the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." <u>Id</u>., 482 U.S. at 89. A determination whether a prison regulation is reasonably related to legitimate penological objectives, in turn requires a consideration of 1) whether the regulation has a logical connection to the legitimate government interest invoked to justify it; 2) whether there are alternative means of exercising the rights that remain open to the inmates; 3) the

---

[1] Plaintiff alleges the "real title of book was 'Microsoft Office Access 2007." Complaint (#2) p. 3.

2 - ORDER

impact that the accommodation of the asserted constitutional right will have on other inmates, guard, and prison resources; and 4) the presence or absence of ready alternatives that fully accommodate the prisoners' rights at de minimus cost to the valid penological interests.  See also, McCabe v. Arave, 827 F.2d 623, 637 (9th Cir. 1987).  In O'Lone v. Estate of Shabazz, the Court refined the second Turner factor by disavowing any requirement that the prison officials disprove the availability of alternatives. The principal subsidiary rules developed by the Ninth Circuit for applying Turner are contained in Casey v. Lewis, 4 F.3d 1516 (9th Cir. 1993) (burden is upon the inmate to demonstrate that the challenged regulation is unreasonable under Turner). See also, Friend v. Olodzieczak, 923 F.2d 126 (9th Cir. 1991); Friedman v. State of Arizona, 912 F.2d 328 (9th Cir. 1990); Harper v. Wallingford, 877 F.2d 728 (9th Cir. 1989); Standing Deer v. Carlson, 831 F.2d 1525 (9th Cir. 1987).

1.) Rational Connection: In determining whether there is a rational connection between the jail regulation and the governmental interest said to justify it, jail officials "need merely put forward a legitimate government interest and provide some evidence that the interest put forward is the actual reason for the regulation." Casey v. Lewis, supra, at 1520-21. Jail officials concern for prison security and the

3 - ORDER

adoption of policies concerning security are entitled to substantial deference. Id. at p. 1521. The asserted goal must not be "so remote as to render the policy arbitrary or irrational." Turner v. Safley, supra at 89-90.

Defendants' Exhibit 101, the Affidavit of Randy Geer , establishes that ODOC reviews the contents of each requested publication on a case by case basis. In this case, defendants rejected the books plaintiff had ordered because defendants determined the books were not "operation manuals" or "how-to manuals but rather "programming manuals" which contained information on how to bypass or manipulate the Microsoft Windows operating system and its security features, as well as gain access to the Microsoft Access database.

Defendants contend that with the programing manuals plaintiff requested, he or other inmates could create secrete communication paths for inmates or "hack" into the system and obtain confidential information. Defendants' Motion for Summary Judgment (#34), Exhibit 101, Affidavit of Randy Geer.

Plaintiff concedes that the books at issue are "programing manuals" but disagrees with defendants' conclusion that the manuals constitute a security threat to the institution. See, Response to Defendants' Concise Statement of Facts (#39).

Federal courts are required to give considerable

4 - ORDER

deference to prison officials when reviewing challenged regulations, Turner v. Safely, supra at 84-85. I find that defendants' conclusion that computer programing manuals could be unsed to compromise institution security is supported by the record as well as "common sense." See, Prison Legal News v. Cook, 238 F.3d 1145, 1150 (9th Cir. 2001).

Based on the foregoing, I find that there is a valid, rational connection between the ODOC policy prohibiting possession of the computer operations manuals at issue in this case and the governmental interest of institution security.

2.) Alternative means: The second factor in the Turner analysis inquires whether "there are alternative means of exercising the right that remains open to prison inmates." Turner v. Safley, supra, 482 U.S. at 90. If alternative avenues for exercising the asserted right are available, "courts should be particularly conscious of the measure of judicial deference owed to corrections officials ... in gauging the validity of the regulation." Id.; Casey v Lewis, supra, 4 F.3d at 1521. The relevant inquiry under the second prong of Turner is not whether the inmates had other means of exercising their right (to communicate with other inmates), but whether they were denied "all means of expression." O'Lone v. Estate of Shabazz, supra, 482 U.S. at 352. Friedman v. State of Arizona, 912 F.2d 328, 332 (9th Cir. 1990), cert.

5 - ORDER

denied, 498 U.S. 1100 (1991).

In this case, plaintiff may exercise his First Amendment rights by possessing computer programing books that do not contain information that could be used to hack into ODOC's computer system or to otherwise compromise institution security. Defendants suggest that such books would include "Windows for Dummies," "Operations for Windows Machines," and "Windows Operator." See Defendants' Exhibit 102, Affidavit of Jerry Johnson.

Therefore, plaintiff had alternative means of obtaining information about how to operate Windows or "achieving educational goals." Response to Defendants' Concise Statement of Facts (#39), p. 2.

3.) Impact on others: The third factor in Turner is the impact that the accommodation of the asserted right would have on guards, other inmates and prison administration. Turner, 482 U.S. at 90. "When the accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, the courts should be particularly deferential to the informed discretion of corrections officials." Id.

The obvious adverse impact of enabling inmates to obtain information that could possibly be used to hack ODOC computers hardly needs to be addressed. Inmates could obtain confidential information about staff and other inmates, the

6 - ORDER

security system generally, and develop unmonitored means to communicate with each other. See, Defendants' Exhibit 102, Affidavit of Jerry Johnson. Such information and communication could be used to commit crimes against staff or other inmates or to plan an attack or escape.

4.) Ready alternatives: "The absence of ready alternatives is evidence of the reasonableness of a prison regulation." Turner, 482 U.S. at 90. It is not a "least restrictive alternative test." Id. Prison officials do not have "to set up and then shoot down every conceivable alternative method of accommodating the claimant's's constitutional complaint." Id.; O'Lone, 482 U.S. at 350 (burden is not on prison officials to disprove the availability of alternatives).

The record indicates that defendants review requested publications (and specifically computer programing and operations manuals) and prohibit only those materials that could threaten institution security. There is no ready alternative to a complete ban on the possession of such material.

Based on all of the foregoing I find that the restriction on plaintiff's First Amendment rights imposed by defendants' conduct in this case withstands the Truner v. Safely analysis and is reasonably related to legitimate penological objectives.

7 - ORDER

<u>Fourteenth Amendment Claim:</u>  Prisoners' liberty interest in receiving their mail require "minimal procedural safeguards." <u>Procunier v. Martinez</u>, 416 U.S. 396, 417-418 (1974), overruled on other grounds by <u>Thornburgh v. Abbot</u>, 490 U.S. 490 (1989).

The minimal procedural safeguards include notice of the rejection of incoming mail as well as a two-level administrative review procedure. <u>Krug v. Lutz</u>, 329 F.3d 692, 696 (9th Cir. 2003); <u>see also</u>, <u>Sorrels v. McKee</u>, 290 F.3d 965, 969 (9th Cir. 2002).

It is uncontradicted that plaintiff received both of these safeguards.  Motion for Summary Judgment (#34), Exhibit 101, Affidavit of Randy Geer, paragraph 7, and attachment 2.

Plaintiff's claim that his due process rights were violated because defendants failed "to define, in any meaningful way, how [the rejection was] valid and reasonably related to legitimate penological interests," is contradicted by the record, including plaintiff's own submissions.

The final order affirming the rejection (quoted in plaintiff's complaint) states:  "The rejected publications contain material that threatens or is detrimental to the security, safety, or good order or discipline of the facility, inmate rehabilitation, or facilitates criminal activity.  It concerns plans for activities in violation of other Department of Corrections administrative directives.  OAR 291-131-0035

8 - ORDER

(Code 2e)." Complaint (#2), Exhibit 1; Motion for Summary Judgment (#34), Exhibit 101, attachment 2.

Plaintiff's Grievance and appeal of the rejection indicates that although plaintiff disagreed with the decision and believed "applying OAR 291-131-0035(2)(e) in [his] case was improper," Complaint (#2), exhibit 2, plaintiff understood the defendants' stated reasons for the rejection.

Thus, assuming that plaintiff was constitutionally entitled to a "meaningful" explanation of why the materials were rejected, I find that plaintiff received a sufficient explanation to enable him to appeal the rejection and was not denied due process.

Defendants' Motion for Summary Judgment (#34) is allowed. Plaintiff's Cross Motion for Summary Judgment (#37) is denied. This action is dismissed.

IT IS SO ORDERED.

DATED this __10__ day of June, 2008.

                              ___/s/ Ann Aiken_____
                              Ann Aiken
                              United States District Judge

9 - ORDER